UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH
CIVIL ACTION NO. 5:13-CV-00188-LLK

LINDSAY L. O'BRYAN                PLAINTIFF

v.

CAROLYN W. COLVIN               DEFENDANT
 Commissioner of Social Security

## MEMORANDUM OPINION AND ORDER

Lindsay O'Bryan filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an administrative decision of the Commissioner of Social Security, who denied her application for disability benefits. The parties have consented to the jurisdiction of the undersigned Magistrate Judge to determine this case, with any appeal lying before the Sixth Circuit Court of Appeals.

Plaintiff seeks review of a decision issued by administrative law judge (ALJ) Mary S. Lassy dated June 22, 2012. Administrative Record (AR), pp. 13-24.

Plaintiff alleges that the ALJ erred in declining to accept the opinion of her treating psychotherapist, Jeff Daugherty, M.D., and the testimony of medical advisor Tom Wagner, Ph.D. These opinions, if accepted, would have required an ultimate finding that Plaintiff is mentally disabled. The ALJ was not required to accept Mr. Daugherty's opinion due to a lack of supporting clinical findings. Under the rules for weighing medical opinions, the ALJ was entitled to reject the non-examining source opinion of Dr. Wagner in favor of the one-time examining source opinion of Gary Maryman, Psy.D.

Therefore, the Court will DENY Plaintiff's motion for summary judgment (Docket No. 12), AFFIRM the Commissioner's final decision, and DISMISS Plaintiff's complaint.

**Background fact and procedural history**

Plaintiff is a younger individual born on March 29, 1983. She alleges disability due to anxiety, obsessive compulsive disorder (OCD), depression, diabetes, and obesity. Plaintiff does not challenge the ALJ's evaluation of her physical impairments.

In June, 2011, Plaintiff was examined at the request of the Commissioner by Gary Maryman, Psy.D. Dr. Maryman assigned non-disabling mental restrictions: "[Plaintiff can] understand, retain, and carry out a simple one to two-step instruction and task. ... This lady should also be able to carry out a work assignment reasonably well across a routine work schedule. She should be able to interact reasonably well with fellow workers and supervisors and there could possibly be some limitations for her in trying to interact and deal with the general public. This young lady would also appear most likely limited to adjusting and adapting to stressors and pressures of only a medium to lower stress work environment." AR, p. 451.

The ALJ gave "greatest weight" to the opinions of Dr. Maryman and the non-examining state agency program psychologists, finding them to be most consistent with the evidence as a whole. AR, p. 21.

The ALJ's residual functional capacity (RFC) finding was that the Plaintiff is limited to: "simple, routine tasks, no detailed tasks, and no work with the public. She could occasionally work with supervisors and coworkers with no fast-paced work and only minimal changes." AR, p. 18.

The vocational expert (VE) testified that an individual with the limitations found by Dr. Maryman and the ALJ[1] could perform a significant number of jobs in the national economy. AR, pp. 46-51.

The primary question before this Court is whether the ALJ erred in giving "greatest weight" to Dr. Maryman's findings.

---

[1] The specific limitations contemplated by the controlling vocational hypothetical were: "simple, routine tasks; no detailed tasks and no work with the public. She could occasionally work with supervisors and coworkers and preferably in a no-fast paced[,] minimal changes in the work environment." AR, p. 47.

Plaintiff's motion for summary judgment and the Commissioner's response in opposition[2] are at Docket Nos. 12 and 14, respectively.

## I. Plaintiff claims that the ALJ erroneously weighed the medical opinions.

Plaintiff's first contention is that the ALJ's RFC finding does not comport with the rules for weighing medical opinion. 20 C.F.R. § 404.1527. These rules contemplate a hierarchy of medical opinion types. At the top is a treating source opinion. Such opinion is generally entitled to the greatest weight and, under certain circumstances, must be given "controlling weight." Section 404.1527(c)(2). Next, are examining-source opinions. "Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you." Section 404.1527(c)(1). Finally, non-examining source opinions are generally entitled to the least weight. In this case, Tom Wagner, Ph.D., testified at the administrative hearing as a medical expert, or advisor. His status was that of a non-examining source.

## I.A. The ALJ properly weighed the treating source medical opinions.

Plaintiff argues that the ALJ erred in declining to give controlling weight to the findings of her treating psychotherapist, Jeff Daugherty, M.D. Mr. Daugherty treated Plaintiff at the Pennyroyal Mental Health Center. He is a certified psychologist with autonomous functions. On September 20, 2011, he completed a mental assessment form, finding that Plaintiff is markedly limited in 13 out of 20 functional areas. AR, pp. 499-500. The VE testified that acceptance of Mr. Daugherty's findings would preclude all work and render Plaintiff disabled. AR, p. 49.

The opinion of a treating source must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Section 404.1527(c)(2). Even if the opinion is not entitled to controlling weight, the Commissioner must determine how much weight to give it considering such

---

[2] The Commissioner filed a Fact and Law Summary, which, for docketing purposes, the Court construes as a response in opposition to Plaintiff's motion for summary judgment.

factors as the length, nature, and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the extent to which the opinion is supported by the evidence, and the consistency of the opinion with the record as a whole. Sections 404.1527(c)(2)-(6). The ALJ's written decision must give "good reasons" for the weight given to a treating source medical opinion. Section 404.1527(c)(2).

Mr. Daugherty completed the SSA-4734 (Mental Residual Functional Capacity Assessment). Typically, this is the form completed by the state agency program psychologist, and treating mental health care providers complete the HA-1152 (Medical Source Statement Of Ability To Do Work-Related Activities (Mental)). The important difference is that the HA-1152 asks the individual completing the form to identify: "What medical/clinical finding(s) support this assessment?" The latter question is directly relevant to the issue of whether the treating source medical opinion is entitled to controlling weight.[3]

The ALJ was entitled to discount Mr. Daugherty's opinion due to lack of supporting clinical findings. See *Price v. Commissioner*, 2009 WL 2514079 (6th Cir.) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion [on a questionnaire] regarding Price's impairments, the ALJ did not err in discounting his opinion."); *Molina v. Commissioner*, 674 F.3d 1104, 1111 (9th Cir.2012) ("[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions."); and *Smith v. Commissioner*, 2009 WL 5126559 (3rd Cir.) ("[C]hecklist forms ..., which require only that the completing physician 'check a box or fill in a blank,' rather than provide a substantive basis for the conclusions stated, are considered 'weak evidence at best' in the context of a disability analysis").

---

[3] According to the Program Operations Manual System (POMS), an internal SSA document, section I of SSA-4734 (the checkbox findings completed by Mr. Daugherty) is "merely a worksheet ... and does not constitute the RFC assessment." POMS DI 24510.060.B.2.a. Instead, "[i]t is the narrative written by the psychiatrist or psychologist in section III ... that adjudicators are to use as the assessment of RFC." POMS DI 25020.010.B.1. *Israel v. Astrue*, 2012 WL 4845578 n.1 (9th Cir.). Mr. Daugherty left section III blank.

In addition, the ALJ found that Mr. Daugherty's treatment notes do not reveal an adequate basis for giving his opinion controlling weight. The evidence shows that Plaintiff's symptoms of anxiety, rages, OCD, depression, and inability to deal with crowds are adequately managed with prescription medication, including Zoloft, in combination with counseling and anger management. AR, pp. 19-21. The ALJ noted that, when she took her medication as directed, Plaintiff's obsessive-compulsive and other symptoms improved to the point she felt well enough to apply for work. AR, pp. 19 and 20.

**I.B. The ALJ properly weighed the examining source medical opinions.**

As indicated above, Gary Maryman, Psy.D., examined Plaintiff in June, 2011, and the ALJ gave Dr. Maryman's findings "greatest weight." AR, pp. 21 and 451.

The other examining source in this case was Craig Cabezas, Ph.D., who saw Plaintiff in August, 2010. AR, pp. 416-421. The ALJ construed Dr. Cabezas' findings as "consistent with [her RFC finding]" except that Dr. Cabezas' assignment of a global assessment of functioning (GAF) score of 42 was "simply [] too low for the claimant's level of functioning." AR, p. 21.

A "GAF [score] is [merely] a clinician's subjective rating, on a scale of zero to 100, of an individual's overall psychological functioning" on the occasion in question. *Kornecky v. Commissioner*, 2006 WL 305648 n. 7 (6th Cir.). An ALJ need not "put stock in a GAF score" for purposes of determining disability status. *Id.* at *14.

The ALJ's finding that Dr. Cabezas' findings are consistent with the ALJ's RFC finding is supported by the completion of the SSA-4734 in September, 2010, by non-examining state agency program psychologist Salley Jessee, M.D. Based upon Dr. Cabezas' findings and the record as a whole, Dr. Jessee opined, at worst, moderate limitation in all functional areas. AR, pp. 436-437.

5

Alternatively, even if Dr. Cabezas found significantly greater restrictions than Dr. Maryman,[4] because both were one-time examining sources of the same hierarchical status, the rules for weighing medical opinions left it to the ALJ's discretion to choose between the two opinions.

**I.C. The ALJ properly weighed the non-examining source medical opinions.**

At the administrative hearing, medical advisor Tom Wagner, Ph.D., testified that Plaintiff's mental impairments meet or equal the clinical criteria of Listing § 12.04 (affective disorder) and Listing § 12.06 (anxiety-related disorder) of Appendix I of the regulations.[5] AR, pp. 42 and 510. A claimant will be considered disabled if she has an impairment that meets or equals one of the Commissioner's listed impairments. Section 404.1520(a)(4)(iii).

Dr. Wagner's testimony that Plaintiff's mental impairments satisfy the Listing apparently was somewhat conclusory and appears to have been based upon uncritical acceptance of the findings of Mr. Daugherty and Dr. Cabezas, which the ALJ found to be unsupported. Dr. Wagner did not offer an explanation why his opinion was clinically superior to that of Dr. Maryman and the state agency program psychologists.

The ALJ rejected Dr. Wagner's opinion, finding that "[g]reatest weight has been placed upon the opinions of Dr. Maryman and the State psychologists who reviewed the claimant's file." AR, p. 21. The "State psychologists" to whom the ALJ referred were Ed Ross, Ph.D., and Jill Rowan, Ph.D., both of whom opined non-disabling mental limitations. AR, pp. 66-67 and 102-103.

While a medical advisor may opine "on issues such as whether [claimant's] impairment(s) meets or equals the requirements of any impairment(s) in the Listing of Impairments, ... the final responsibility for deciding these issues is reserved to the Commissioner," and the ALJ "will not give any special

---

[4] Dr. Cabezas' findings appear to be compatible with Dr. Maryman's as the former are broad and vague. According to Dr. Cabezas, Plaintiff's ability to concentrate and focus and work with others publically are "moderately to severely impaired," and due to mood and anxiety disturbances, there are other "concerns." AR, p. 421.
[5] According to Dr. Wagner, Plaintiff's mental impairments satisfy the so-called "B criteria" of these Listings in that they result in marked difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. AR, p. 520.

6

significance to the source of an opinion on issues reserved to the Commissioner." Sections 404.1527(e)(2) and (3). The ALJ did not err in preferring Dr. Maryman's examining source opinion over Dr. Wagner's non-examining source opinion.

Admittedly, it is somewhat exceptional for an ALJ to reject the testimony of her own selected medical advisor. Courts routinely affirm reliance upon medical advisor testimony. See, for example, *Barker v. Secretary*, 40 F.3d 789, 794 (6th Cir.1994) (the medical advisor "had access to the entire medical record in the case, whereas [other sources] worked only from [their] personal examination of Mr. Barker. Additionally, [the medical advisor] observed Mr. Barker at the [] administrative hearing, listened to his testimony, and based his conclusions in part on his first-hand observation of Mr. Barker").

Nevertheless, rejection of the Commissioner's own medical advisor's opinion is not unprecedented. In *Cohen v. Commissioner*, 851 F.Supp.2d 277 (D.Mass.2012), for example, the court affirmed the ALJ's rejection of the medical advisor's testimony that the plaintiff's mental impairment met or equaled the Listing.

The ALJ did not err in rejecting the medical advisor's testimony.

### II. The ALJ did not err in considering Plaintiff's failure to follow prescribed treatment as adversely affecting her credibility.

In order to obtain disability benefits, a claimant must follow prescribed treatment that could restore her ability to work absent good reason. Section 404.1530.

Plaintiff's second contention is that she had a valid excuse for not taking her prescribed psychotropic medication (Zoloft): "The ALJ's finding that Ms. O'Bryan 'has not shown a justifiable cause for failure to follow prescribed treatment' [AR, p. 21] is unfounded and not consistent with SSR [Social Security Ruling] 82-59. The ALJ had a duty to give notice [to] Ms. O'Bryan and her counsel that noncompliance would be an administrative issue and failed to do so." Docket 12-1, p. 9 of 14.

The ALJ found that the evidence shows that Plaintiff's symptoms of anxiety, rages, OCD, depression, and inability to deal with crowds are adequately managed with Zoloft. AR, pp. 19-21. When

7

Plaintiff took the Zoloft as directed, her symptoms improved to the point she felt well enough to apply for work. AR, p. 20.

Plaintiff argues that her mental impairment itself results in an irrational fear of taking psychotropic medication, thereby preventing or limiting her ability to take it as directed. She stated that she fears that Zoloft will cause her throat to swell and "make me different as in make my personality change for bad." AR, pp. 19 and 275. She is also allegedly afraid of psychological counseling sessions, crowded places, the general public, and germs and contamination. AR, pp. 16, 266, 293, and 421.

This is not a case where Plaintiff consistently and steadfastly refused psychotropic medication. The ALJ documented that the evidence shows that Plaintiff waivered and waffled on the issue of taking her medication, with several starts and stops along the way. AR, pp. 19 and 20. At the hearing, Plaintiff testified that her symptoms improve with Zoloft; that she had re-commenced it; and was working up to the prescribed dosage despite her medication phobia. AR, pp. 37 and 41-42. The ALJ found that this waivering undermined Plaintiff's credibility and that she does not have a justifiable excuse for not taking prescribed medication that has the capacity to restore her ability to work. AR, p. 20.[6] Similarly, Plaintiff history of going in and out of counseling undermines her claim of inability to afford it.

Non-compliance was not the ALJ's sole basis in support of her credibility findings. Courts in this Circuit have found SSR 82-59 inapplicable "in cases where the ALJ has considered the noncompliance as only one factor is assessing a claimant's credibility or in cases where no prior disability ruling was made by an ALJ that was thereafter undone by a claimant's noncompliance with treatment recommendations." *Kinter v. Commissioner*, 2013 WL 1878883 at * 9 (N.D.Ohio) (collecting authorities); see also *Holley v. Commissioner*, 253 F.3d 1088, 1092 (8th Cir.2001) ("[SSR] 82-59 only applies to

---

[6] Even if this had been a case of credible, consistent refusal, there was no justifiable excuse: 1) Acceptance of treatment would be contrary to the claimant's religion; 2) Certain cataract surgeries; 3) Certain extreme fears of surgery; 4) Unable to afford prescribed treatment; 5) Advisement by a legitimate medical source not to submit to treatment; 6) Prior unsuccessful surgery; 7) Treatment is highly risky; or 8) Treatment involves amputation. SSR 82-59.

claimants who would otherwise be disabled within the meaning of the Act; it does not restrict the use of evidence of noncompliance for the disability hearing").

The ALJ did not err in considering Plaintiff's lack of treatment as one factor in the overall credibility assessment.

### III. The ALJ's mental RFC finding was legally adequate.

Plaintiff's third contention is that the ALJ's RFC finding lacks sufficient specificity and does not include a function-by-function assessment as contemplated by SSR 96-8p, thereby improperly "requir[ing] [the VE] to infer the [actual] degree of limitation imposed" by the hypothetical restriction. Docket 12-1, p. 10 of 14.

The specific limitations given to the VE were: "simple, routine tasks; no detailed tasks and no work with the public. She could occasionally work with supervisors and coworkers and preferably in a no-fast paced[,] minimal changes in the work environment." AR, p. 47.

Plaintiff has identified no language in SSR 96-8p or any other authority showing that the foregoing limitations were legally insufficient. Further, in response to these limitations, the VE identified specific jobs: medium housekeeper (Dictionary of Occupational Titles (DOT) Code #323.687-014); light housekeeper (DOT #323.687-014); sedentary escort vehicle driver (DOT #919.663-022); and sedentary surveillance system monitor (DOT #379.367-010). Plaintiff has identified no incompatibility between the limitations given to the VE and the mental capacities required by these positions as described in the DOT. Nor has she identified any evidence from which the ALJ was required to find that she actually suffers from a degree of limitation that would preclude these jobs. At worst, Plaintiff has identified a harmless error.

**IV. The ALJ's credibility assessment is supported by substantial evidence.**

Plaintiff's fourth contention is that "the administrative decision failed to comply with [SSR] 96-7p," the Ruling pertaining to "assessing the credibility of an individual's statements." Docket 12-1, p. 11 of 14.[7]

However, preliminarily, Plaintiff argues that the ALJ's mental RFC finding does not comport with the requirements of SSR 85-16 because the ALJ's written decision does not reflect consideration of the third-party function reports of her husband, Willard O'Bryan (AR, pp. 260-267) and mother, Tammy Newberry (AR, pp. 229-236).

SSR 85-16 provides, in pertinent part, that: "To arrive at an overall assessment of the effects of mental impairment, relevant, reliable information, obtained from third party sources such as social workers, previous employers, family members, and staff members of halfway houses, mental health centers, and community centers, may be valuable in assessing an individual's level of activities of daily living."

There is no indication that the ALJ failed to take the third-party statements into account in determining Plaintiff's RFC. Like Plaintiff's own testimony, the ALJ implicitly found the third-party statements to be incredible to the extent that they exceeded her RFC finding. It was unnecessary for the ALJ to say this explicitly. The Court is able to meaningfully review the ALJ's assessment of the third-party statements.

SSR 96-7p describes an open-ended, multi-factors approach to evaluating a claimant's credibility.[8] Credibility determinations rest with the ALJ. *Siterlet v. Secretary*, 823 F.2d 918, 920 (6th

---

[7] As analyzed above in connection with Plaintiff's second contention, one important component of the ALJ's credibility assessment was her finding that Plaintiff's history of starting and stopping her prescription medication and counseling sessions undermined Plaintiff's credibility with respect to an alleged mental impairment that prevents her from complying with prescribed treatment. Plaintiff does not here seek to revisit that aspect of the credibility determination.

[8] Among the factors to be considered are: 1) daily activities; 2) location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate symptoms; 4) type, dosage, effectiveness, and side

Cir.1987). Generally, an ALJ's credibility assessment will not be disturbed by a reviewing court absent a "compelling reason." *Smith v. Commissioner*, 307 F.3d 377, 379 (6th Cir.2001). When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. See *Cummins v. Secretary*, 670 F.2d 81, 84 (7th Cir.1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility").

The ALJ acted within her province as fact finder in determining that Plaintiff's testimony and the third-party statements of her husband and mother were credible only to the extent of her RFC finding. Plaintiff's has failed to identify a compelling reason for this Court to overturn that the ALJ's credibility assessment.

**V. The Court does not reach the question of the appropriate remedy.**

Plaintiff's fifth and final contention is that the appropriate remedy in this case is a judicial payment of disability benefits as opposed to a remand for further administrative proceedings.

"If a court determines that substantial evidence does not support the [Commissioner's] decision, the court can reverse the decision and immediately award benefits only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir.1994).

The Court does not reach the question of the remedy because it finds that the Commissioner's decision is supported by substantial evidence.

---

effects of medication taken to alleviate symptoms; 5) treatment; and 6) any other measures used to relieve symptoms.

## **ORDER**

For the foregoing reasons, the Court DENIES Plaintiff's motion for summary judgment (Docket No. 12), AFFIRMS the Commissioner's final decision, and DISMISSES Plaintiff's complaint.